UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LAURA H.W. CHUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-11258-WGY |
| | ) | |
| ZS ASSOCIATES, INC. and ARUN SHASTRI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' ANSWER AND COUNTERCLAIM

Defendants ZS Associates, Inc. ("ZS") and Arun Shastri ("Mr. Shastri") respond to the specific allegations of the Complaint of Plaintiff Laura H.W. Chung as follows:

### Jurisdiction

1.      Paragraph 1 states a legal conclusion that requires no response.

2.      Paragraph 2 states a legal conclusion that requires no response.

### Parties

3.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the matter asserted in Paragraph 3.

4.      Admitted.

5.      Defendants admit that Mr. Shastri is a resident in the Commonwealth of Massachusetts.

### Factual Allegations

6.      Admitted.

7.    Admitted.

8.    Defendants admit that, at all times during Plaintiff's employment at ZS, Mr.

Shastri was a Principal at ZS and responsible for the operation of ZS's Boston office.

9.    Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Denied.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.  Further answering, on February 22, 2005, ZS gave Ms. Chung

three months' notice that her employment would be terminated.  Her employment did not

terminate on February 22, 2005.

28.    Denied.

29.    Paragraph 29 states a legal conclusion that requires no response.  To the

extent that Paragraph 29 makes factual allegations, the allegations are denied.

30.    Denied.

31.    Denied.

32.    Denied.  Further answering, Plaintiff's salary was $115,000 per year.

33.    Admitted.

34.    Defendants admit that, on or about March 2, 2005, Plaintiff filed a charge of

discrimination with the Massachusetts Commission Against Discrimination and the United

States Equal Opportunity Commission against them.  Defendants deny the remaining

allegations of Paragraph 34.

35.    Denied.  Further answering, subsequent to March 2, 2005, ZS learned

additional facts concerning Plaintiff's misconduct, including the fact that Plaintiff had

violated ZS policies and her agreement with ZS, and ZS terminated her employment on

March 24, 2005, based on that information and simultaneously demanded the return of the

signing bonus, which Plaintiff refused to provide.

36.    Denied.  Further answering, prior to Plaintiff's termination of employment

on March 24, 2005, Plaintiff was not receiving severance payments but was instead

receiving continued salary payments.

37.    Denied.

GSDOCS-1460927-1

38.    Denied.

## Count I

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

## Count II

43.    Defendants adopt by reference their responses to the separately numbered Paragraphs above.

44.    Paragraph 44 appears to state a legal conclusion that requires no response. To the extent that Paragraph 44 makes factual allegations, the allegations are denied.

45.    Denied.

46.    Denied.

47.    Denied.

## Count III

48.    Defendant ZS Associates adopts by reference its responses to the separately numbered Paragraphs above.

49.    Paragraph 49 appears to state a legal conclusion that requires no response. To the extent that Paragraph 49 makes factual allegations, the allegations are denied.

50.    Denied.

51.    Denied.

GSDOCS-1460927-1

Count IV

52.    Defendant Shastri adopts by reference his responses to the separately numbered Paragraphs above.

53.    Denied.

54.    Denied.

## AFFIRMATIVE DEFENSES

First Affirmative Defense

Plaintiff fails to state a claim upon which relief can be granted because she fails to allege one or more essential elements of her purported claims.

Second Affirmative Defense

Plaintiff's employment with ZS was terminated for legitimate, non-discriminatory reasons.

Third Affirmative Defense

Defendants never discriminated against Plaintiff on any basis.

Fourth Affirmative Defense

Plaintiff's claims are barred by the doctrines of estoppel and/or unclean hands.

Fifth Affirmative Defense

Plaintiff did not suffer damages as a result of Defendants' conduct.

Sixth Affirmative Defense

If Plaintiff suffered any damages, which Defendants deny, she had a duty to mitigate such damages and failed to do so.

GSDOCS-1460927-1

Seventh Affirmative Defense

Count IV fails to state a claim against Defendant Shastri because Defendant Shastri cannot interfere with any contract between Plaintiff and ZS Associates, as a matter of law.

**COUNTERCLAIM FOR BREACH OF CONTRACT**

Defendant and Plaintiff-in-Counterclaim ZS Associates, Inc. ("ZS") brings this counterclaim against Plaintiff and Defendant-in-Counterclaim Laura H.W. Chung (hereinafter "Ms. Chung") and alleges as follows:

COUNT I
(Breach of Contract)

1.      The terms of Ms. Chung's offer of employment with ZS, which Ms. Chung executed on July 26, 2004 (the "Offer of Employment"), provide, *inter alia*, that Ms. Chung would receive a signing bonus of $15,000 (the "Signing Bonus") on condition that the signing bonus must be returned to ZS "if [she did] not start active employment with ZS in 2004 for any reason, or if [she did] not complete one full year (12 months) of continuous full-time employment with ZS immediately after that point for any reason (except for involuntary termination of [her] employment by ZS without cause)". A true and accurate copy of the Offer of Employment is attached hereto as Exhibit A.

2.      As a result of Ms. Chung's improper conduct and conduct that violated her obligations to ZS, ZS terminated Ms. Chung's employment; Ms. Chung's termination was not without cause; and Ms. Chung's termination occurred less than one year after she commenced employment with ZS.

3.      Pursuant to the Offer of Employment, Ms. Chung thereby forfeited her Signing Bonus and was required to return it to ZS.

4.      Ms. Chung has failed and refused to return her Signing Bonus to ZS.

-6-

5.    Ms. Chung's failure and refusal to return her Signing Bonus to ZS

constitutes a breach of her agreement contained in the Offer of Employment, and ZS has

been injured and damaged as a result.

WHEREFORE, ZS demands that this Court enter Judgment in its favor and against

Ms. Chung, and award ZS damages in the amount of $15,000, plus interest and costs, as

well as such further relief as the Court deems just and proper.


DEFENDANTS DEMAND A TRIAL BY JURY.


ZS ASSOCIATES, INC. and
ARUN SHASTRI,

By their attorneys,

Joshua M. Davis (BBO # 558852)
L. Jason Law (BBO # 645942)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776


Dated:  July 7, 2005


CERTIFICATE OF SERVICE

I, L. Jason Law, hereby certify that I have this day served a copy of the foregoing document by both hand delivery and by first class mail, postage prepaid, to Plaintiff's counsel, Paul F. Wood, Esq., of the Law Office of Paul F. Wood, P.C., 45 Bowdoin Street, Boston, MA 02114.



L. Jason Law

Dated:  July 7, 2005

-7-



**Confidential**

REC'D AUG 0 2 2004

July 23, 2004

#2751

P A I D

AUG 1 6 2004

Laura Haley Walker Chung
33 Howard Street
Cambridge, MA  02139

Dear Laura:

With great expectations of your future potential with ZS, we are pleased to offer you the opportunity to begin your career as a Consultant in either our Evanston, Illinois or our Boston, Massachusetts office.  This offer has eleven major elements.

Direct compensation is made up of five components: salary, signing bonus, first-year bonus, performance bonus and profit-sharing.  These five components will give you a first year direct compensation of approximately $144,000.  These components are detailed below:

**Salary:**  Your starting annual base salary will be $115,000.  All associates are paid on the 15th and the last day of every month.  Salaries are reviewed on an annual basis in the summer of each year.

**Signing Bonus:**  When you accept this offer, we will pay you $15,000 as a signing bonus.  The bonus is payable upon acceptance of offer.  However, if you do not start full-time active employment with ZS in 2004 for any reason, or if you do not then complete one full year (12 months) of continuous full-time employment with ZS immediately after that point for any reason (except for involuntary termination of your employment by ZS without cause), then you agree to refund the signing bonus in its entirety ($15,000).

**First Year Bonus:**  At the end of your first year (12 full months of full-time active employment in this position), you will be eligible to receive a First Year Bonus.  This bonus will be up to 10% of your base salary income earned during that year.  The actual amount of the bonus will be determined based on a review of your performance during your first year, but will be no less than 5% of your earned base salary during the period.

**Performance Bonus:**  ZS typically pays employees a performance-based bonus at the end of each calendar year.  You will be eligible to receive such an annual bonus starting in the first December following your one-year anniversary (when you receive the First Year Bonus described above).  Based on a review of your performance and a review of the company's performance, we will determine your incentive compensation. In your first year of eligibility, you will receive a bonus of up to 12% of your eligible salary income. You can expect that this target bonus percentage would likely increase each subsequent year while you are a Consultant with ZS.

**401(k) Retirement Savings and Profit Sharing Plan:**  You will be able to participate in our contributory 401(k) Profit Sharing Plan after you have been at ZS for one full calendar quarter.  The primary objective of this program is to provide long-term financial



ZS Associates
1800 Sherman Avenue
Evanston, IL 60201 US
847.492.3600 Tel
847.864.6280 Fax
www.zsassociates.com

Boston • Chicago • Evanston • Frankfurt • London
Milan • Paris • Princeton • San Francisco • Tokyo • Toronto

security for our firm's members while reducing current tax exposure. ZS contributions to the plan follow a vesting schedule and the firm matches your contributions up to 3% of your salary. In addition, we may contribute to the plan further from our profits. The matching component will add about $2,600 to your first year's total compensation.

In addition to components of the offer detailing direct compensation, as described above, this offer also includes elements describing other benefits of employment with ZS Associates. You will be eligible for all of the following benefits as of your date of resuming active employment with ZS. In addition, for each of these benefits as well as the 401(k) Plan, the time you accrued during your prior employment with ZS will factor into your level of benefit.

**Vacation**: We offer three weeks of vacation per year to start, and four weeks annually after you have completed three full years (36 months) with ZS. In addition, ZS Associates has ten paid holidays per year.

**Insurance**: We offer a choice of group insurance plans to cover major medical and dental expenses. ZS pays 80% of the cost for the employee's coverage and 50% of the cost of coverage for other immediate family members in the basic plan. We also participate in a Flexible Benefits Spending Plan, in which you can pay for non-reimbursed medical and dependent care costs with pre-tax dollars. ZS also provides long-term disability income insurance, which insures up to 60% of your base salary against disability. Each employee pays their own premiums for this coverage (which cost 10 cents per month per $1000 of annual salary), which allows any benefits received to be income-tax-free. Finally, ZS also provides life insurance coverage in the amount of three times your annual salary, with ZS paying these premiums in full. Further details about all of these benefits are available to you upon request.

Finally, the following elements of your offer relate to logistics: getting you back to ZS Associates and getting you started again.

**Relocation**: We will reimburse your reasonable residence search and moving expenses up to a maximum of $10,000 for you to move closer to your new ZS office.

Reimbursable residence-hunting expenses include travel, lodging, meals, and ground transportation for one residence search trip for you and a partner. They also include one-time expenses related to leasing your new residence (credit-check fees, rental agent fees), or one-time expenses related to buying your new residence (attorney fees, title fees, inspection fees).

Reimbursable moving expenses include only those that currently qualify as deductible moving expenses under US income tax regulations, but without regard to the distance you are moving. Further details about what is reimbursable appear in our relocation policy, which is available to you. Please make sure you read the details of this policy in advance of incurring relocation expenses.

If you do not start full-time active employment with ZS in 2004 for any reason, or if you do not then complete one full year (12 months) of full-time employment with ZS immediately after that point for any reason (except for involuntary termination of your employment by ZS without cause), then you agree to refund these reimbursements in

ZS

their entirety. Also, some of the reimbursements relating to your relocation may be considered taxable income to you. If you have any questions regarding relocation expenses, please do not hesitate to ask.

**Location:** As you know, we have openings in both our Evanston, Illinois office and our Boston, Massachusetts offices. We would be delighted to have you join in either location. Logistically, we would like you to decide on your preferred location and indicate it upon acceptance of offer.

**Confidentiality and Related Issues:** Our work at ZS Associates often involves the use of confidential information of our clients, as well as the development and use of ZS proprietary software and processes. Upon accepting our offer, you will be required to sign an agreement on confidentiality and related issues. The signing bonus mentioned above is treated as consideration for this agreement. If you have questions regarding this agreement, or would like to review a copy of it, please do not hesitate to ask.

**New Employee Orientation:** ZS runs an orientation and training program for new ZS associates several times each year. This training program is designed to provide an overview of the problems you will solve and the skills you will develop as a Consultant. It also provides an excellent opportunity to get to know other new ZS associates. We would like to time the start of active employment with ZS to be prior to or concurrent with our next training session starting on September 20.

We are excited about the possibility of starting your career with ZS in this permanent position. If you decide to accept this position, please sign the copy of this letter and return it to us in the enclosed envelope. Please know that we would like to hear from you regarding your decision as soon as possible. We will consider this offer to be open and valid until August 6, 2004.

The elements of this offer are personal and specific to you, and accordingly, we do not consider them appropriate to be shared with the general public. If you have any questions about any of the elements of this offer, or would like to discuss the position further, please do not hesitate to call me.

Sincerely,

Pete Masloski
Principal

Accepted by: _____

Preferred office location: _Boston_____

Social Security Number: _152 52 6401_____

Date of Birth: _5/2/72_____
(required by Personal Responsibility and Work Opportunity Reconciliation Act--42 USC §653a.)

Date: _7/26/04_____

ZS